Mingin v. Alva Glass Manufacturing Co.

---

### WHITALL E. MINGIN

#### v.

### THE ALVA GLASS MANUFACTURING COMPANY et al.

1. The right to a preference in payment of their wages, given to workmen of an insolvent corporation, is wholly statutory, and does not vest until the happening of the statutory requirements.

2. It is created only when insolvency proceedings are begun, and then arises in favor of those persons, and for such amounts and under such conditions as the legislation on the subject then in force may prescribe.

Mingin v. Alva Glass Manufacturing Co.

3. Apprentice workmen, who have allowed their wages to accumulate upon an agreement that they should be paid at the end of their apprenticeship, have no more extensive right to a preference than have any other unpaid workmen in the regular employ of the insolvent corporation.

On petition of receiver &c.

The bill of complaint was filed on the 27th day of November, 1895, and has resulted in a decree that the defendant corporation is insolvent. A receiver has been appointed, he has realized upon all the assets of the corporation, and reports that he now has in hand the sum of $4,423.09, from proceeds of sales &c. Claims have been filed with the receiver as follows:

|  |  |  |
|---|---:|---:|
| By workmen, for wages | $10,146 | 89 |
| By apprentices, for wages held back | 358 | 20 |
| By C. W. Shoemaker, for salary | 2,068 | 39 |
| By R. Elmer Shoemaker, salary | 2,234 | 08 |
| By Cumberland Mfg. Co., for services of C. W. Shoemaker and R. Elmer Shoemaker | 629 | 76 |
| By other creditors | 17,326 | 83 |
| Total of all claims filed with receiver | $32,764 | 15 |

The receiver is now ready to state his final account and to distribute to those claimants who are entitled to it the balance which may be found to be in his hands. The balance which will remain for distribution is already indicated to be insufficient to meet the claims of those who assert preferences under the statute for wages as employes in the service of the corporation, if these claims are admitted as entitled to payment to the full amount named therein as preferences. Under this situation the counsel representing the different classes of claims appear before the court and enter into a stipulation declaring the facts in the case applicable for the ascertainment of the rightfulness of their several claims; and to this stipulation they append a schedule showing the names of the several workmen and apprentices, the amount of their schedule claims for wages, when their work began and ended.

The apprentices claim that their wages were retained in trust for them by the insolvent company, upon an understanding that

they should be returned to them on the completion of their full term of apprenticeship; that the intervention of the insolvency proceedings before the completion of their term of apprenticeship was occasioned by no fault or action of theirs; that this alone prevented the full service of their term of apprenticeship, and that their money, retained as above stated, ought properly to be payable to them in full out of the assets in the hands of the receiver. They also assert a right to a preference for wages under the Corporation acts.

The other workmen claim that the amounts respectively due them for wages are preferred claims under the provision of section 639 of the General Corporation act of 1875 (*Rev. 1877 p. 188*), as enlarged by the act of March 31st, 1887 (*P. L. of 1887 p. 99*), and that they hold this preference as a vested interest and should be first paid in full, or if the total of their claims exceed the balance in hand, that they alone should participate in the division of it. They insist that the act of 1892 (*P. L. of 1892 p. 426*), substantially re-enacted in the General Corporation act of 1896 (*P. L. of 1896 p. 303 § 83*), which limits the preference of employes to wages earned during the last two months preceding the assumption of jurisdiction in insolvency, cannot be used to affect their vested right to their preference, and they declare they are controlled by the above-cited preceding acts of 1875 and 1887, and have an unlimited preference for all wages due them.

On the part of the general creditors, it is claimed that no preference should be allowed to any of the workmen to whom wages are due from the corporation by reason of the statutory provisions above referred to, or because of the retention of a portion of the wages of the apprentices until the completion of their term, but that an equal dividend should be declared to all claimants. The general creditors insist, however, that if any preference is given to the laborers, the act of April 8th, 1892, has superseded all previous legislation giving wages preference in case of the insolvency of a corporation, and that the provisions of the Corporation act of 1896 (*P. L. of 1896 p. 303*) are identical with those of the act of 1892.

30

All  parties  join  with  the  receiver  in  the  application  to  the
court  for  direction  as  to  the  mode  in  which  the  surplus  remain-
ing  in  the  hands  of  the  receiver  shall  be  distributed.

*Mr. Austin H. Swackhamer,* for  the  complainant  and  work-
men  claimants.

*Mr. William T. Hilliard,* for  the  defendant,  and  for  C. W.
Shoemaker  and  R.  Elmer  Shoemaker  and  Cumberland  Glass
Manufacturing  Company.

*Mr. Jonathan W. Acton,* for  the  apprentice  claimants.

GREY,  V. C.

As  to  the  claims  of  the  apprentices.  The  portion  of  their
wages  earned  but  held  back  has  no  greater  equity  than  the  un-
paid  portion  of  any  other  class  of  workmen's  wages.  There  is
no  assertion  that  the  amount  so  held  back  exists  in  any  specific
and  separate  form  held  in  custody  for  them ;  no  trust  fund  has
been  created  or  held  for  these  unpaid  wages.  They  stand  merely
as  a  credit  in  favor  of  the  apprentices,  for  which  they  have  a
right  of  action  on  breach  of  the  contract  by  the  company,  as  any
other  workmen  may  have  under  like  circumstances.

I  am  referred  to  the  case  of  *Bedford* v. *Newark Machine Co.,
1 C. E. Gr. 121,* as  declaring  that  the  apprentices  have  some
equity  superior  to  that  of  other  workmen  in  the  employ  of  an
insolvent  company.  That  case  arose  like  this,  on  an  application
for  direction  to  a  receiver  as  to  disposition  of  funds  in  his  hands.
The  right  of  the  workmen  to  a  lien  on  the  assets  of  the  com-
pany  in  the  hands  of  the  receiver,  was  asserted  under  section  42
of  the  act  of  1849,  authorizing  the  establishment  of  manufac-
turing  companies.  That  act  gave  a  lien  for  their  wages,  in  case
of  insolvency  of  the  company,  to  laborers  in  its  employ.  There
were  wages  due  to  laborers  who  had  left  the  employ  of  the  com-
pany  previous  to  the  act  of  insolvency,  and  also  to  others  who
were  at  that  time  still  in  its  employ.  The  question  in  dispute
was  whether  both  these  classes  of  laborers  were  entitled  under

the statute to a preference; and only those laborers were held to have a preference who were actually in the employ of the company at the time of the suspension of its business operations, which was, under the statute, the act of insolvency. There were also apprentices in the employ of the company, and these were held to be entitled to their wages without regard to the time they were last actually laboring for the company, because there was no evidence that they had been discharged from their indentures prior to the act of insolvency, and the refusal or inability of the company to furnish them with employment did not affect the continuance of their employment. For this reason they were declared to be within the class of laborers who were in the employ of the company at the time of the suspension of its business, whether actually engaged in the doing of labor or not. The apprentices were not given any different or more favorable position than other laborers in the employ of the company, but because of the continuity of their contract under their indentures they were deemed to be within the class of laborers who were in the employ of the company at the time of the act of insolvency, within the meaning of the statute.

The act of 1887 (*P. L. of 1887 p. 99*) changed the law, as defined by the case of *Bedford* v. *Newark Machine Co.*, and provided that the lien upon the assets of the insolvent company for wages should extend to all the laborers for services rendered in behalf of the corporation before the date which the court adjudged to be the time when the insolvency occurred, "whether such laborers were in the actual employ of the corporation at that time or not." Whatever rights the apprentices have to a preference are secured to them not because they are apprentices, but because they are employes, and those rights are in no way superior to those of any other employes of the insolvent company.

It being ascertained that the apprentices and all other laborers are alike in their rights of preferential payment, it remains to be ascertained what those rights are under the facts of this case.

It may be premised that the privilege of preferential pay-

ment is wholly statutory and is always dealt with in statutes. which direct the disposition of the assets of insolvent corporations. These acts prescribe the conditions and characteristics which will entitle a certain class of claimants to preferential payment over other creditors whose claims may be equally meritorious. The privilege conferred is in derogation of the general equity of all creditors to share equally in the distribution of the assets of an insolvent debtor.

The laborers who, in this case, claim a preference, began working for the insolvent company in the year 1890 and while section 63 of the Corporation act of April 7th, 1875 (*Rev. p. 188 § 63*), as modified by the act of March 31st, 1887 (*P. L. of 1887 p. 99*), was in force. The provisions of these statutes gave to the laborers who had been in the employ of an insolvent corporation a lien upon the assets of the company for the whole of the amount of wages which might be due them, respectively, for all services rendered before the date which the court adjudged to be the time when the insolvency occurred.

The act of 1892 (*P. L. of 1892 p. 426*) directed that the workmen should have a first lien upon the assets of the insolvent company, but prescribed that this lien should be limited to the amount of wages owing for services rendered within two months next preceding the date when the proceedings in insolvency were actually instituted.

This statute has been, in all its material elements, re-enacted in the Corporation act of 1896. *P. L. of 1896 p. 303 § 83.* These workmen in this case, who earned wages as above stated, prior to 1892, insist that they should be given a preferential payment, under the acts of 1875 and 1877, for the full amount of those wages, and that the limitation of their preference, under the act of 1892, to wages earned two months next before the assumption of jurisdiction in insolvency, ought not to be applied to them, because they say they took their employment before the passage of that act, at a time when the acts of 1875 and 1887 were in operation, and they insist that they acquired a vested right to this preference, which cannot be taken from them by subsequent legislation. This argument is based upon the

assumption that the preference given by the statute of 1875 became a part of this workman's contract as soon as he accepted employment, and that, during its continuance, he has always been entitled to the same preference, which could not be taken away by subsequent legislation.

An examination of the several statutes will show that the employes' lien has its origin in the taking of jurisdiction by a court to administer the assets of the insolvent company. The lien which the laborer has upon the assets of the employing company does not attach coincidently with nor as attendant upon the making of the contract of employment, but only when all the prescribed statutory conditions which create that lien have come into being.

By section 63 of the act of 1875, it was only in case of the insolvency of the corporation that the workmen were given a lien on the assets of the corporation. The time when the lien attached was defined in the *Bedford* v. *Newark Machine Co. Case, ubi supra*, to have been the period when the insolvency occurred.

The act of 1887 enlarged the class of workmen who might have the lien, and extended its benefits to include all claims for services rendered before the date which the court adjudged to be the time when insolvency occurred. The workmen had no lien under these acts against the assets of a solvent corporation engaged in the conduct of its ordinary business. They acquired none by their contract; it came as a pure gift, and only when insolveney occurred. There is nothing submitted to me which in any way indicates that this company has become insolvent or suspended its ordinary business, whereby the workmen acquired a lien on its assets, before the act of April 8th, 1892 (*P. L. of 1892, p. 426*), was passed, which limited the workmen's lien to the amount of wages for services rendered within two months next before the insolvency proceedings were begun. The bill in this case was filed on the 25th day of November, 1895; the earliest act of insolvency set out in the bill was the permanent closing of the works, which is stated to have been "about two years ago;" that is, about November 25th, 1893, more than eighteen

months after the act of 1892 had on its passage gone into effect. As the workmen had acquired no lien under the acts of 1875 and 1887, they had no vested interest which the act of 1892 either could or did impair. The mere chance that they might continue to work for the corporation, until at some indefinite time in the future, when it might become insolvent and might be indebted to them, and they might, if insolvency proceedings were taken against it, claim a lien on its assets, is quite too remote a possibility to be recognized as a vested right protected against legislative action by the modification of the statute giving them a preference. There is no basis for the application of the principle that vested rights cannot be impaired by subsequent legislation, because there were no rights vested at the time when the subsequent legislation was enacted.

The insolvency proceedings in this case are controlled by the legislation in force at the time they were begun. This was the act of 1892, re-enacted in its substance in 1896. *P. L. of 1896 p. 277.* It is under this legislation that the receiver holds these assets, and it is under it that the lien of the workmen became fixed on the assets of the insolvent company. Their right to a preference was therefore given them by the same act which must guide and control the distribution, and no question arises as to the taking away of vested rights by subsequent legislation. Under this act of 1892 the workman acquires no lien on the assets of an insolvent company until the court has assumed jurisdiction to administer those assets. And even if the company be insolvent, and the court has assumed control of its assets, the workman, under that act, has no lien upon them, unless it has become indebted to him for wages earned during the two months next preceding the beginning of the insolvency proceedings. His preferential privilege is therefore created by the statute which authorizes the insolvent suit, and is wholly dependent upon the institution of the insolvency proceedings. He can reach the assets only through the receiver, who is appointed by the court to administer them. *Hinkle* v. *Camden Safe Deposit and Trust Co., 2 Dick. Ch. Rep. 334.*

The statutory provision for laborers' preference in the act of

1892 differs so radically from the previous legislation on the same subject, as to the extent of the lien and the conditions under which the preference will be given, that it must be construed to stand as a substitute for the earlier statutes on the subject. It is true that there are no words in the statute of 1892 in terms repealing the previous acts of 1875 and 1887, but no repealer is needed where the preceding statute, treating of subjects *in pari materia*, cannot stand and be enforced with the succeeding statute on the same subject. The act of 1892 is clearly repugnant to the former one in its limitation of the time within which the wages must have been earned for which a preference is given, and being the later statute the act of 1892 must stand as a repealer by construction of the previous acts of 1875 and 1887 as to the extent of the preference.

This question was raised, on somewhat different lines, in *Mersereau* v. *Mersereau Co., 6 Dick. Ch. Rep. 382*, and the act of 1892 was in that case held to have superseded section 63 of the act of 1875, and that no words of repealer were necessary where the repugnancy between the several statutes was so manifest.

I will advise an order instructing the receiver to distribute the balance of the assets shown by his account in satisfaction of a prior and first lien for all wages of workmen due for labor done within two months next preceding the date when this insolvency suit was begun, if there are any claims for wages earned during that period. The residue of the balance of assets must be divided *pro rata* among the general creditors. If wages were not earned during the period named, they are not entitled to a preference and come in with the claims of the general creditors.